FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARCUS A. ROBERTS; KENNETH A. CHEWEY; ASHLEY M. CHEWEY; JAMES KRENN, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellants*, <br><br> v. <br><br> AT&T MOBILITY LLC, *Defendant-Appellee.* | No. 16-16915 <br><br> D.C. No. 3:15-cv-03418-EMC <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted October 17, 2017
San Francisco, California

Filed December 11, 2017

Before: Michael Daly Hawkins, William A. Fletcher,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's order compelling arbitration of putative class action claims against AT&T Mobility LLC by customers who alleged that AT&T falsely advertised their mobile service plans as "unlimited" when in fact it intentionally slowed data at certain usage levels.

Plaintiffs filed a putative class action, alleging statutory and common law consumer protection and false advertising claims under California and Alabama law. AT&T moved to compel arbitration in light of the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) "that the Federal Arbitration Act preempts state law deeming AT&T's arbitration provision to be unconscionable." Plaintiffs opposed arbitration on First Amendment grounds. The district court compelled arbitration, holding as a threshold matter that there was no state action.

The panel agreed with the district court and held that there was no state action in this case. The panel rejected plaintiffs' assertion that there is a state action whenever a party asserts a direct constitutional challenge to a permissive law under *Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727 (1996). The panel held that *Denver Area* did not broadly rule that the government is the relevant state actor whenever there is a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

direct constitutional challenge to a "permissive" statute, and it did not support finding state action in this case.

The panel rejected plaintiffs' argument that they could show state action because the Federal Arbitration Act, including judicial interpretations of the statute, encourages arbitration such that AT&T's actions were attributable to the state. The panel held that the Act merely gives AT&T the private choice to arbitrate, and does not encourage arbitration such that AT&T's conduct is attributable to the state.

## COUNSEL

Alexander H. Schmidt (argued), Colts Neck, New Jersey ; Michael Liskow, Wolf Haldenstein Adler Freeman & Herz LLP, New York, New York; Rachele R. Rickert, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, California; Michael W. Sobol and Roger N. Heller, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, California; John A. Yanchunis and Rachel Soffin, Morgan & Morgan Complex Litigation Group, Tampa, Florida; Jean Sutton Martin, Law Office of Jean Sutton Martin PLLC, Wilmington, North Carolina; Daniel M. Hattis, Hattis Law, Clyde Hill, Washington; D. Anthony Mastando and Eric J. Artrip, Mastando & Artrip LLC, Huntsville, Alabama; Douglas C. Martinson II, Martinson & Beason PC, Huntsville, Alabama; for Plaintiffs-Appellants.

Andrew J. Pincus (argued), Archis A. Parasharami, Kevin Ranlett, and Daniel E. Jones, Mayer Brown LLP, Washington, D.C.; Donald M. Falk, Mayer Brown LLP, Palo Alto, California; for Defendant-Appellee.

Karla Gilbride and F. Paul Bland Jr., Washington, D.C.; Brian Hardingham, Oakland, California; as and for Amicus Curiae Public Justice P.C.

Adam G. Unikowsky, Jenner & Block LLP, Washington, D.C.; Kater Comerford Todd and Warren Postman, U.S. Chamber Litigation Center, Washington, D.C.; Deborah R. White, Retail Litigation Center Inc., Arlington, Virginia; for Amici Curiae Chamber of Commerce of the United States of America and Retail Litigation Center, Inc.

## OPINION

TALLMAN, Circuit Judge:

Marcus Roberts, Ashley and Kenneth Chewey, and James Krenn ("Plaintiffs") appeal an order compelling arbitration of their putative class action claims against AT&T Mobility LLC ("AT&T"). Plaintiffs allege that AT&T falsely advertised their mobile service plans as "unlimited" when in fact it intentionally slowed data at certain usage levels. AT&T moved to compel arbitration, and Plaintiffs opposed on First Amendment grounds. The district court compelled arbitration, holding as a threshold matter that there was no state action.

On appeal, Plaintiffs raise two arguments. First, they claim there is state action whenever a party asserts a direct constitutional challenge to a permissive law under *Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727 (1996). Second, Plaintiffs contend that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, including judicial interpretations of the statute, "encourages" arbitration such that AT&T's actions are attributable to the

state. We find there is no state action under either theory and affirm.

I

Plaintiffs—AT&T customers and putative class representatives—contracted with AT&T for wireless data service plans. Their contracts included arbitration agreements. Plaintiffs allege AT&T falsely advertised that its mobile service customers could use "unlimited data," but actually "throttled"—intentionally slowed down—customers' data speeds once reaching "secret data usage caps" between two and five gigabytes. Plaintiffs claim a phone's key functions, such as streaming video or browsing webpages, are useless at "throttled" speeds.

Plaintiffs filed a putative class action, alleging statutory and common law consumer protection and false advertising claims under California and Alabama law. AT&T moved to compel arbitration in light of the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), "that the FAA preempts state law deeming AT&T's arbitration provision to be unconscionable." Plaintiffs opposed the motion on First Amendment grounds. They argued that an order forcing arbitration would violate the Petition Clause, as they "did not knowingly and voluntarily give up their right to have a court adjudicate their claims," and could not "bring their claims in small claims court."

The district court granted AT&T's motion to compel arbitration. It held, as a threshold matter, that there was no state action and did not reach Plaintiffs' constitutional challenge. The court agreed to reconsider, but again held there was no state action. It rejected Plaintiffs' three main arguments, concluding that (1) judicial enforcement alone does not automatically establish state action; (2) *Denver*

*Area* did not hold that state action categorically exists whenever there is a direct challenge to a permissive statute; and (3) there was insufficient "encouragement" to attribute AT&T's conduct to the government.

The district court granted Plaintiffs' motion to certify the order compelling arbitration for immediate interlocutory appeal. *See* 28 U.S.C. § 1292(b). The court found there was "substantial ground for difference of opinion on two issues" that raised "novel and difficult questions of first impression[:]" if state action exists under (1) *Denver Area*, or (2) the "encouragement" test. We granted permission to appeal.

## II

We have jurisdiction under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5. We review orders compelling arbitration de novo. *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1186 (9th Cir. 1998) (reviewing order compelling arbitration certified under § 1292(b)), *overruled on other grounds by EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003). The district court's state action determination is subject to de novo review. *Merritt v. Mackey*, 932 F.2d 1317, 1324 (9th Cir. 1991) (citation omitted).

## III

There is no state action here. First, AT&T's conduct must be fairly attributable to the state, and *Denver Area* did not hold otherwise. Second, AT&T is not a state actor under the "encouragement" test. The FAA merely gives AT&T the private choice to arbitrate, and does not "encourage" arbitration such that AT&T's conduct is attributable to the state.

## A

AT&T's actions must be attributable to the government for state action to exist.  *Denver Area* did not broadly rule that the government is the relevant state actor whenever there is a direct constitutional challenge to a "permissive" statute, and does not support finding state action here.

## 1

"A threshold requirement of any constitutional claim is the presence of state action."  *Duffield*, 144 F.3d at 1200. Because the First Amendment right to petition is "a guarantee only against abridgment by [the] government," *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) (citation omitted), "state action is a necessary threshold which [Plaintiffs] must cross before we can even consider whether [AT&T] infringed upon [Plaintiffs'] First Amendment rights," *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996).

The state action requirement "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power," and "avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982).  By requiring courts to "respect the limits of their own power as directed against . . . private interests," *id.* at 936–37, the state action doctrine "ensures that the prerogative of regulating private business remains with the States and the representative branches, not the courts," *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).  "Whether this is good or bad policy, it is a fundamental fact of our political order." *Lugar*, 457 U.S. at 937.

We apply a two-part state action test.  *Id.*  "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state[.]"  *Id.*  "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Id.*  While the second *Lugar* prong "does not restrict the application of the Constitution solely to governmental entities," *Duffield*, 144 F.3d at 1200, a private party's actions must be "properly attributable to the State," *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).  Otherwise, "private parties could face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them."  *Lugar*, 457 U.S. at 937.

2

Under *Lugar*, AT&T's conduct must be attributable to the state.  *See id.*  Plaintiffs try to circumvent this requirement by bringing a "direct First Amendment challenge to the FAA and its Supreme Court[] interpretations[.]"  They assert state action exists "because the government is the relevant state actor as to Plaintiffs' direct challenge, not AT&T."[1]

But the Supreme Court already rejected that argument in *American Manufacturers*.  There, the plaintiffs sued private insurers for withholding disputed medical treatment payments, as permitted by a state workers' compensation law.  526 U.S. at 43, 48.  The plaintiffs—"[p]erhaps hoping

---

[1] Plaintiffs argued below that judicial enforcement of AT&T's arbitration agreements constitutes state action, but abandoned that argument on appeal.  It is well established that judicially enforcing arbitration agreements does not constitute state action.  *See, e.g.*, *Duffield*, 144 F.3d at 1202.

to avoid the traditional application of our state-action cases"—framed their challenge as "direct." *Id.* at 50. They claimed "the 'identity of the defendant' or the 'act or decision by a private actor or entity who is relying on the challenged law'" was irrelevant. *Id.*

The Court was unpersuaded. The plaintiffs' approach "ignore[d] our repeated insistence that state action requires" satisfying the second *Lugar* prong—"that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* (citation omitted). The Court then "identif[ied] the specific conduct of which the plaintiff[s] complain[ed,]" and addressed the issue they sought to evade: "whether a *private insurer's* decision to withhold payment for disputed medical treatment may be fairly attributable to the State so as to subject insurers to [constitutional] constraints[.]" *Id.* at 51 (quotation omitted) (holding that the private insurers were not state actors).

Similarly, plaintiffs were required to show a private defendant was a "state actor" in *Flagg Bros.*, a seminal case on which *American Manufacturers* relied. *See id.* at 50; *Flagg Bros.*, 436 U.S. at 155–56. *Flagg Bros.* involved a due process challenge to a warehouseman's proposed sale of furniture as permitted by the New York Uniform Commercial Code. 436 U.S. at 151–53. Because plaintiffs had named the warehouseman, Flagg Brothers, as a defendant, the Court asked "whether Flagg Brothers' action may be fairly attributed to the State of New York," and "conclude[d] that it may not." *Id.* at 157; *see also Duffield*, 144 F.3d at 1200 (noting that the Constitution would apply to "[p]rivate entities like the [New York Stock Exchange] and the [National Association of Securities Dealers]" only "if their actions are 'fairly attributable' to the state" (quoting *Lugar*, 457 U.S. at 936)).

Just as the plaintiffs in *American Manufacturers* and *Flagg Bros.* had to show the private defendants were "state actors," AT&T's conduct must be fairly attributable to the state. *See* 526 U.S. at 50–51; 436 U.S. at 157. Plaintiffs cannot convert AT&T into a state actor simply by framing their FAA challenge as "direct." If every private right were transformed into a governmental action just by raising a direct constitutional challenge, "the distinction between private and governmental action would be obliterated." *See Ohno*, 723 F.3d at 999 (quotation omitted).

3

Plaintiffs argue *Denver Area*'s "implicit edict" changed this established state action framework and made "proving private arbitration clause drafters to be state actors unnecessary." We disagree.

a

As an initial matter, Plaintiffs' reading must be incorrect, as *Denver Area* did not overrule *Flagg Bros.*, decided eighteen years earlier; nor was *Denver Area* overruled by *American Manufacturers*, decided three years later.

Plaintiffs unsuccessfully attempt to distinguish *Flagg Bros.* and *American Manufacturers* as section 1983 lawsuits that "sought money damages from . . . private parties for harm caused by the alleged constitutional violations." This distinction, drawn from a dissenting opinion, lacks binding legal authority. It is also barred by *Duffield*, where we asked if similarly postured private defendants were state actors. 144 F.3d at 1200. Still, the splintered decision—even considered in a vacuum—does not stand for the sweeping proposition Plaintiffs assert.

b

*Denver Area* addressed First Amendment challenges to three provisions of the Cable Television Consumer Protection and Competition Act of 1992, 106 Stat. 1460, which empowered cable operators to restrict offensive, sex-related speech aired on cable television. 518 U.S. at 732. Two provisions permitted cable system operators to ban the broadcasting of programming—on leased access and public access channels—if the operator believed the programming contained "patently offensive" sex-related material.[2] *Id.* Previously, federal law had barred cable operators from exercising any editorial control over programming on leased and public access channels. *Id.* at 734.

All nine Justices addressed the merits of the First Amendment challenge,[3] but only six explicitly addressed state action—four in a plurality opinion, and two in a separate opinion. *Id.* at 737 (plurality op.), 782 (Kennedy, J., concurring in part, concurring in the judgment in part, and dissenting in part). Justice Breyer's plurality opinion, joined in relevant part by three Justices, explained:

---

[2] A third provision required cable operators to segregate certain "patently offensive" programming from leased access channels to a single channel blocked except by subscriber request. *Denver Area*, 518 U.S. at 733.

[3] A majority of the Court held that the provision permitting cable operators to restrict content on leased access channels was consistent with the First Amendment, but the provision permitting them to restrict content on public access channels was not. 518 U.S. at 768 (plurality op.) (describing the outcome of the case). The provision requiring cable operators to segregate certain content on leased channels was also held unconstitutional. *Id.*

> Although the court [of appeals] said that it found no "state action," it could not have meant that phrase literally, for, of course, petitioners attack (as "abridg[ing] . . . speech") a congressional statute—which, by definition, is an Act of "Congress." More likely, the court viewed this statute's "permissive" provisions as not themselves restricting speech, but, rather, as simply reaffirming the authority to pick and choose programming that a private entity, say, a private broadcaster, would have had in the absence of intervention by any federal, or local, governmental entity.

*Id.* at 737 (alterations in original) (citation omitted). The plurality further reasoned "that the First Amendment, the terms of which apply to governmental action, ordinarily does not itself throw into constitutional doubt the decisions of private citizens to permit, or to restrict, speech—and this is so *ordinarily* even where those decisions take place within the framework of a regulatory regime such as broadcasting." *Id.*

c

We read *Denver Area* very narrowly. The case—its six opinions, with a majority opinion as to only one issue, plurality opinions as to others, and separate concurring and dissenting opinions—is "the epitome of a splintered opinion." *See Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (referring to a case that generated six opinions). In the 21 years since it was published, the Supreme Court has never cited *Denver Area* in addressing state action.

Moreover, the plurality opinion on which Plaintiffs rely is not binding. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1127 n.5 (9th Cir. 2011) (Supreme Court plurality opinions, while persuasive, are not binding precedent). Thus, if any controlling state action analysis emerged from *Denver Area*, it would be the "common denominator" of the four-Justice plurality opinion and Justice Kennedy's opinion, joined by Justice Ginsburg—the only opinions to explicitly address state action. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]" (quotation omitted)); *United States v. Davis*, 825 F.3d 1014, 1022 (9th Cir. 2016) (applying the "common denominator" approach to the *Marks* rule, which requires that a narrower concurring opinion be a logical subset of the plurality opinion).

Justice Kennedy, joined by Justice Ginsburg, wrote:

> In [two of the challenged provisions], Congress singles out one sort of speech for vulnerability to private censorship in a context where content-based discrimination is not otherwise permitted. *The plurality at least recognizes this as state action*, avoiding the mistake made by the Court of Appeals.

*Denver Area*, 518 U.S. at 782 (Kennedy, J., concurring in part, concurring in the judgment in part, and dissenting in part) (emphasis added) (citation omitted).[4]

To the extent the plurality and Justice Kennedy's opinion overlap at all,[5] it is seemingly where Justice Kennedy explicitly agrees with the plurality. That is, state action exists when "Congress singles out one sort of speech for vulnerability to private censorship in a context where content-based discrimination is not otherwise permitted." *See id.* This narrow reading also accounts for *Denver Area*'s unique context, where cable operators were empowered by statute to censor speech on public television, and as a result were "unusually involved" with the government given their monopolistic-like power over cable systems. *See id.* at 739 (plurality op.), 782 (Kennedy, J., concurring in part, concurring in the judgment in part, and dissenting in part). These unique characteristics of cable systems are not at issue here.

---

[4] Plaintiffs rely heavily on Justice Kennedy's subsequent statement that "[s]tate action lies in the enactment of a statute altering legal relations between persons, including the selective withdrawal from one group of legal protections against private acts, regardless of whether the private acts are attributable to the State." *Denver Area*, 518 U.S. at 782 (Kennedy, J., concurring in part, concurring in the judgment in part, and dissenting in part). But this reasoning is neither binding nor consistent with *American Manufacturers*, where there was no state action even though "[t]he State . . . ha[d] shifted [the statute] from favoring the employees to favoring the employer." 526 U.S. at 54.

[5] The Supreme Court has found "it not useful to pursue the *Marks* inquiry to the utmost logical possibility when it has so obviously baffled and divided the lower courts that have considered it." *Nichols v. United States*, 511 U.S. 738, 745–46 (1994).

Finally, our reluctance to expand the state action doctrine in other settings supports a confined reading of *Denver Area*. For example, we have refused to "alter our mode of analysis under the generally applicable *Lugar* framework," despite *Shelley v. Kraemer*, 334 U.S. 1 (1948), which established that judicially enforcing a legal right or obligation can constitute state action. *Ohno*, 723 F.3d at 998. We explained that *Shelley* "has generally been confined to the context of discrimination claims under the Equal Protection Clause" and does not apply "[i]n the context of First Amendment challenges to [judicially enforced] speech-restrictive provisions in private agreements or contracts[.]" *Id.*; *see also Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995) (rejecting the defendants "*Shelley v. Kraemer* theory that a court's enforcement of a private contract constitutes state action," as "*Shelley* . . . has not been extended beyond the context of race discrimination"). Plaintiffs here cannot invoke *Denver Area* to evade *Lugar*. They must show AT&T is a state actor.

4

Plaintiffs spend much of their briefing arguing "that requiring private actors to be state actors as a prerequisite to challenging permissive statutes would immunize many such statutes from constitutional scrutiny, including the FAA." Given this "immunization-from-judicial-scrutiny problem," they assert that "normative justice demands" a relaxed state action doctrine, under which "the government is the relevant state actor for direct challenges of permissive statutes and that the private infringer's status is irrelevant." This policy argument does not and cannot alter the existing state action doctrine under which the private party's status *is* relevant and serves to preserve "the essential dichotomy between

public and private acts that our cases have consistently recognized." *Am. Mfrs.*, 526 U.S. at 53 (quotation omitted).

Plaintiffs' argument also assumes the FAA violates citizens' constitutional rights. For example, Plaintiffs allege that "AT&T resorts to the tired fiction that its adhesive arbitration clause is an 'agreement,' as if consumers had a choice." But the FAA declares that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Concepcion*, 563 U.S. at 336 (quoting 9 U.S.C. § 2). And "the FAA does not require parties to arbitrate when they have not agreed to do so[.]" *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Plaintiffs disagree with this case law, but we are bound by it. *See, e.g.*, *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("No one denies that lower courts must follow [the Supreme Court's] holding in *Concepcion*."); *United States v. Dare*, 425 F.3d 634, 641 (9th Cir. 2005) ("[I]t certainly is not our role as an intermediate appellate court to overrule a decision of the Supreme Court or even to anticipate such an overruling by the Court." (quotation omitted)).

## B

Plaintiffs argue that, even if their *Denver Area* argument fails, they can still show state action under *Lugar* because the government sufficiently "encourages" AT&T to arbitrate. They reason "the FAA's mandate and the Supreme Court's corresponding enforcement of consumer adhesion forced arbitration contracts have sufficiently encouraged the drafting of such contracts, particularly in the mobile phone industry, so as to hold the State fairly responsible for their

burgeoning use." This stretches the encouragement test too far.

1

For a private party to be a state actor, there must be "a sufficiently close nexus between the State and the challenged action of the [private] entity." *Duffield*, 144 F.3d at 1200 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)). Courts first identify "the specific conduct of which the plaintiff complains," paying "careful attention to the gravamen of the plaintiff's complaint." *Am. Mfrs.*, 526 U.S. at 51 (quotation omitted). "Whether such a 'close nexus' exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State.'"[6] *Id.* at 52 (citation omitted); *see also Duffield*, 144 F.3d at 1202 ("The touchstone of state action in the context of governmental oversight is whether the government has moved beyond mere approval of private action into the realm of 'encouragement, endorsement, and participation' of that action." (citation omitted)). Conduct "by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs.*, 526 U.S. at 52.

2

For example, *Duffield* held that the New York Stock Exchange and National Association of Securities Dealers were not state actors under the "encouragement" test—even

---

[6] The Supreme Court has articulated three other tests for determining whether a private party's conduct amounts to state action, none of which Plaintiffs have invoked. *See Ohno*, 723 F.3d at 995.

though the SEC approved and influenced their rules, including a mandatory arbitration requirement. 144 F.3d at 1201–02. There was not "a sufficiently close nexus between the State and the *challenged* action" because "the 'challenged action' is the requirement that [the plaintiff] actually arbitrate her lawsuit, [and] that requirement is found in her private contract, not in federal law." *Id.* at 1201. "No federal law required [the plaintiff] to waive her right to litigate[,] . . . and no state action is present in simply enforcing that agreement." *Id.*; *see also Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987) ("The arbitration involved here was private, not state, action; it was conducted pursuant to contract by a private arbitrator."). The SEC had not crossed the line of "mere approval . . . into the realm of 'encouragement'" because no SEC "rule or regulation . . . specifie[d] arbitration as the favored means of resolving employer-employee disputes." *Duffield*, 144 F.3d at 1202 (citations omitted); *accord Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 368 (7th Cir. 1999).

Even assuming *Duffield* "left open whether state action would exist [under the circumstances here]," as Plaintiffs claim, *American Manufacturers* eliminated any lingering doubt. There, the choice by private insurers to withhold payments for disputed medical treatments was not state action under the encouragement test. *Am. Mfrs.*, 526 U.S. at 51. The state authorized—but did not require—insurers to withhold payment; "[t]he decision . . . [was] made by concededly private parties," and depended on "judgments made by private parties' without 'standards . . . established by the State." *Id.* at 52 (quotation omitted).

The plaintiffs argued the State had "encouraged" insurers to withhold payment by amending the relevant statute to allow the practice when it had previously been prohibited. *Id.* at 53. Recognizing this could "in some sense be seen as encouraging [insurers,]" or "favoring the employer," the Court nevertheless rejected the argument:

> [T]his kind of subtle encouragement is no more significant than that which inheres in the State's creation or modification of any legal remedy. We have never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it. It bears repeating that a finding of state action on this basis would be contrary to the "essential dichotomy" between public and private acts that our cases have consistently recognized.

*Id.* at 53–54 (citations omitted).

In fact, allowing insurers to withhold payments could be interpreted as "state *inaction*"—the legislature's choice not to interfere in private disputes between insurers and employees. *Id.* at 53 (emphasis added). "The most that can be said of the statutory scheme . . . is that whereas it previously prohibited insurers from withholding payment for disputed medical services, it no longer does. Such permission of private choice cannot support a finding of state action." *Id.* at 54 (citation omitted).

By contrast, there was sufficient encouragement to establish state action in *Skinner v. Railway Labor*

*Executives' Ass'n*, 489 U.S. 602 (1989). *Skinner* considered Federal Railroad Administration regulations that "removed all legal barriers" to drug testing by preempting any collective bargaining agreement that did not provide for the testing, prohibited railroad companies from negotiating away their right to conduct tests in the future, punished employees who refused to submit to testing, and authorized the government to obtain testing results. *Id.* at 615. These coercive provisions evinced the government's "strong preference for [drug] testing." *Id.*

3

Here, AT&T's conduct is not attributable to the state, and thus the second *Lugar* prong is not met.[7] As an initial matter, there is not a "sufficiently close nexus between the State and the *challenged action* of [AT&T.]" *See Duffield*, 144 F.3d at 1200 (emphasis added). Here, as in *Duffield*, "the 'challenged action' is the requirement that [Plaintiffs] actually arbitrate [their] lawsuit." *See id.* at 1201. Plaintiffs concede, as they must, that "the FAA regulates private conduct," and "private parties draft adhesive consumer arbitration clauses, not governments[.]" Because "[n]o federal law required [Plaintiffs] to waive [their] right to litigate," there is no state action simply because the state enforces that private agreement. *See id.* at 1201–02 ("[N]either private arbitration nor the judicial act of enforcing it under the FAA constitutes state action."); *see also Federal Deposit*, 822 F.2d at 842 n.9 ("[W]e do not find

---

[7] AT&T's argument that Plaintiffs cannot meet the first *Lugar* prong fails. The alleged constitutional deprivation arose because AT&T exercised its federally created right to compel arbitration under the FAA, and "[u]ndoubtedly the State was responsible for the statute." *Lugar*, 457 U.S. at 938.

in private arbitration proceedings the state action requisite for a constitutional due process claim."); *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action." (citation omitted)).

Plaintiffs contend this case law does not apply because "the Supreme Court (and Congress via the FAA, as so interpreted)" has "exercised its power in a manner so heavily favoring arbitration . . . to fairly attribute AT&T's use of such contracts to the State[.]" That argument is a nonstarter. If amending a statute to afford private insurers a previously unavailable right—thereby "shift[ing the remedial system] from favoring the employees to favoring the employer"— does not provide sufficient "encouragement," *Am. Mfrs.*, 526 U.S. at 54, then neither does the FAA, which simply ensured courts would "place arbitration agreements *on an equal footing* with other contracts and enforce them according to their terms," *Concepcion*, 563 U.S. at 339 (emphasis added) (citations omitted).

There is insufficient "encouragement" even assuming "*Concepcion* [and its progeny] crystalized the directive . . . that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Neither has "the government . . . moved beyond mere approval of private action," *Duffield*, 144 F.3d at 1202, simply because the Supreme Court has said the FAA "reflect[s] . . . 'a liberal federal policy favoring arbitration,'" *Concepcion*, 563 U.S. at 339 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). While the post-*Concepcion* increase in arbitration could "in some sense be seen as encouraging [AT&T to arbitrate,] . . .

this kind of subtle encouragement is no more significant than that which inheres in the State's creation or modification of any legal remedy." *See Am. Mfrs.*, 526 U.S. at 53; *see also Katz v. Cellco P'ship*, No. 12-cv-9193-VB, 2013 WL 6621022, at *6 (S.D.N.Y. Dec. 12, 2013) (holding that "the very existence of the FAA" did not sufficiently encourage Verizon to include arbitration agreements in customer contracts, as "that promotion hardly constitutes the kind of significant encouragement necessary to a finding of state action" (citing *Am. Mfrs.*, 526 U.S. at 53)), *aff'd in part, vacated in part on other grounds, remanded*, 794 F.3d 341 (2d Cir. 2015).

By contrast, the FAA and its interpretations, like the payment-withholding statute in *American Manufacturers*, could also be seen as state *inaction*—the government's decision not to interfere with private parties' choices to arbitrate. *See* 526 U.S. at 53. In any event, the FAA has no provision even resembling the sort of coercive regulations that met the encouragement test in *Skinner*. *See* 489 U.S. at 615. "[O]ur cases will not tolerate the imposition of [constitutional] restraints on private action by the simple device of characterizing the State's inaction as 'authorization' or 'encouragement.'" *Am. Mfrs.*, 526 U.S. at 54 (quotation omitted).

## IV

"[P]ermission of a private choice cannot support a finding of state action," *id.*, and "private parties [do not] face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them," *Lugar*, 457 U.S. at 937. Plaintiffs must,

but cannot, show AT&T's conduct is attributable to the state. Because there is no state action, we **AFFIRM**.[8]

Costs are awarded to the Appellee. *See* Fed. R. App. P. 39(a)(2).

---

[8] This opinion does not reach the merits of Plaintiffs' Petition Clause argument, as there is no state action—"[a] threshold requirement of any constitutional claim[.]" *See Duffield*, 144 F.3d at 1200.