Filed 4/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUNNY C. WONG,<br><br>    Plaintiff and Appellant,<br>v.<br><br>RESTORATION ROBOTICS, INC.,<br><br>    Defendant and Respondent. | A161489<br><br>(San Mateo County<br>Super. Ct. No. 18CIV02609) |

The value of shares of stock in Restoration Robotics, Inc., a Delaware corporation, dropped within months of the company's 2017 initial public stock offering. Sunny C. Wong, who had bought the company's stock, sued Restoration Robotics in San Mateo County Superior Court, alleging that the company's offering documents contained materially false and misleading statements in violation of the Securities Act of 1933 (15 U.S.C. § 77a et seq. (1933 Act).) Although the 1933 Act generally allows a plaintiff to choose whether to file suit in state or federal court, and bars the removal to federal court of a suit filed in state court, a "federal forum provision" (FFP) in Restoration Robotics' certificate of incorporation states that 1933 Act claims must be brought in federal court unless Restoration Robotics consents to a different forum. So Restoration Robotics promptly moved to dismiss Wong's complaint, arguing that because of the FFP the case could be brought only in federal court unless Restoration Robotics consented to state court jurisdiction, which it had not. The trial court eventually declined jurisdiction

on the basis of the FFP, and a judgment of dismissal without prejudice was entered in favor of Restoration Robotics.

Wong now appeals, raising three arguments.  First, the FFP violates the 1933 Act, which states that both state and federal courts have jurisdiction over 1933 Act causes of action.  (15 U.S.C. § 77v(a).)  Second, the Delaware statutory scheme permitting the FFP violates the Commerce Clause and the Supremacy Clause of the United States Constitution.  And third, the FFP is invalid and should not be enforced in any event because it is unfair and unreasonable.  We find none of these arguments persuasive, and we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Introduction of Federal Forum Provisions*

We begin with some background on the development of FFP's like the one at issue here.

The 1933 Act protects investors by requiring companies offering securities for sale to the public to make a " 'full and fair disclosure' " of relevant information.  (*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund* (2015) 575 U.S. 175, 178.)  "The linchpin of the Act is its registration requirement."  (*Ibid.*)  As a general matter, a company can offer securities only after filing a registration statement, which "must contain specified information about both the company itself and the security for sale."  (*Ibid.*)  The 1933 Act created private rights of action "to aid enforcement of" the obligation to make full and fair disclosure.  (*Cyan, Inc. v. Beaver County Employees Retirement Fund* (2018) __ U.S. __ [138 S.Ct. 1061, 1066] *(Cyan)*.)  Congress authorized state and federal courts to exercise jurisdiction over 1933 Act suits, and barred the removal of those suits from state to federal

2

court. (*Ibid.*) "So if a plaintiff chose to bring a 1933 Act suit in state court, the defendant could not change the forum." (*Ibid.*)

In 1995, prompted by " 'perceived abuses of the class-action vehicle in litigation involving nationally traded securities,' " Congress amended the 1933 Act by enacting the Private Securities Litigation Reform Act (PSLRA). (*Cyan, supra*, 138 S.Ct. at p. 1066.) The PSLRA included certain provisions that applied only to 1933 Act claims that were filed in federal court. "To take one example, the statute required a lead plaintiff in any class action brought under the Federal Rules of Civil Procedure to file a sworn certification stating, among other things, that he had not purchased the relevant security 'at the direction of plaintiff's counsel.' " (*Id.* at p. 1067 [quoting 15 U.S.C. § 77z-1(a)(2)(A)(ii)].) But the PSLRA had " 'unintended consequences' ": " 'Rather than face the obstacles set in their path by the [PSLRA], plaintiffs and their representatives began bringing class actions under state law.' " (*Ibid.*)

A few years later, Congress further amended the 1933 Act in the Securities Litigation Uniform Standards Act of 1998 (SLUSA) "to limit the conduct of securities class actions under State law, and for other purposes." (Pub.L. No. 105-353 (Nov. 3, 1998) 112 Stat. 3227.) SLUSA prohibited certain securities class actions that are based on state law, and provided for the removal of such class actions to federal court, where they were subject to dismissal. (*Cyan, supra*, 138 S.Ct. at pp. 1067-1068.) However, as the Supreme Court held in *Cyan*, "SLUSA did nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only 1933 Act violations. Neither did SLUSA authorize removing such suits from state to federal court." (*Id.* at p. 1078.)

3

In recent years, some corporations preferring to litigate 1933 Act claims in federal court adopted forum-selection provisions designating federal courts as the exclusive forums for those claims. (*Salzberg v. Sciabacucchi* (Del. 2020) 227 A.3d 102, 111 (*Salzberg*).) In *Salzberg*, the Delaware Supreme Court analyzed federal forum provisions that appear in the certificates of incorporation of three Delaware corporations that, like Restoration Robotics, launched initial public offerings in 2017. (*Id.* at p. 109.) *Salzberg* held that federal forum provisions were facially valid under the Delaware General Corporation Law, which governs the contents of certificates of incorporation, and that the provisions did not violate any Delaware or federal law or policy. (*Id.* at pp. 113, 115, 132.)

B.     *Restoration Robotics' Initial Public Offering and Federal Forum Provision*

Restoration Robotics, incorporated in Delaware and headquartered in California, develops, and manufactures a robotic system used in a type of hair transplantation procedure.[1]

On September 1, 2017, Restoration Robotics filed a Form S-1 Registration Statement with the Securities and Exchange Commission as a step toward its initial public offering. After several amendments, the registration statement was declared effective on October 11, 2017. The first of the amendments, filed on September 18, 2017, included among its exhibits a "Form of Amended and Restated Certificate of Incorporation, to be in effect at the time of consummation of this offering." Article VIII of the amended Certificate of Incorporation was entitled "Exclusive Forum" and contained the

---

[1] Restoration Robotics was acquired by Venus Concept Ltd. in a 2019 merger. Although the post-merger company is called Venus Concept Inc., we adopt the parties' convention of referring to the company as Restoration Robotics before and after the merger.

4

FFP at issue in this case: "Unless the Corporation consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act of 1933, as amended. Any person or entity purchasing or otherwise acquiring any interest in any security of the Corporation shall be deemed to have notice of and consented to this Article VIII."

The initial public offering (IPO) was completed on October 16, 2017, with investors buying 3,575,000 shares at $7 per share, generating just over $25 million.

## C. *Proceedings in the Trial Court*

In May 2018, Wong filed a class action complaint against Restoration Robotics, alleging that he purchased the company's common stock "pursuant to the IPO and was damaged thereby." The complaint was brought on behalf of those who bought Restoration Robotics stock "pursuant or traceable" to the IPO, and alleged that the registration statement was inaccurate and misleading, contained untrue statements of material fact, and failed to disclose material facts, in violation of sections 11, 12(a)(2), and 15 of the 1933 Act. (15 U.S.C. §§ 77k, 77*l*(a)(2), 77o.) The complaint alleged that the registration statement mischaracterized the company's liquidity and capital needs, and failed to disclose that substantial engineering and programming work was required before the implantation technology would be commercially viable. At the time the complaint was filed, Restoration Robotics stock traded at less than 50 percent of the IPO sales price.[2]

---

[2] Wong's complaint was not the only 1933 Act suit filed against Restoration Robotics in state court: another plaintiff filed a similar complaint in 2019. The cases were consolidated, after which the operative consolidated class action complaint was filed below. Wong, however, is the

In August 2018, Restoration Robotics moved to dismiss the complaint based on the FFP.  The trial court initially denied the motion in an order that adopted the analysis of a Delaware Chancery Court decision holding that forum selection clauses requiring all 1933 Act claims to be brought in federal court (in other words, FFP's) are facially invalid under Delaware law.  (See *Sciabacucchi v. Salzberg* (Del.Ch.Ct., Dec. 19, 2018) 2018 WL 6719718, at p. *3, revd. *Salzberg, supra,* 227 A.3d 102.)

Restoration Robotics renewed its motion to dismiss after the Delaware Supreme Court's ruling in *Salzberg*, *supra*, 227 A.3d 102, reversed the Chancery Court decision.  In holding that FFP's are not contrary to Delaware or federal law or policy, the Delaware Supreme Court observed that the question remained whether FFP's would "be respected and enforced" by states other than Delaware.  (*Id.* at p. 133.)  The court acknowledged "that our sister states might react negatively to what could be viewed as an out-of-our lane power grab," but concluded that "there are persuasive arguments that could be made [that an FFP] does not offend principles of horizontal sovereignty—just as it does not offend federal policy."  (*Id.*, at p. 134.)

Wong opposed the renewed motion to dismiss, arguing that, *Salzberg* notwithstanding, the FFP was contrary to the 1933 Act, violated the Commerce Clause and the Supremacy Clause of the United States Constitution, and was invalid and unenforceable under California law.

---

sole appellant.  Separately, class actions raising similar allegations were filed in federal district court and consolidated.  (*In re Restoration Robotics, Inc. Securities Litigation* (N.D.Cal. No. 5:18-cv-03712-EJD.)  Restoration Robotics represents that in May 2021, after about three years of litigation, the district court granted preliminary approval to a settlement on behalf of the certified class.

The trial court treated the motion to dismiss as a motion for forum non conveniens based upon a mandatory forum selection clause, and concluded that Wong failed to show the FFP was unenforceable, unconscionable, unjust, or unreasonable.[3]  The court further concluded that Wong's arguments that the FFP violated the 1933 Act or the federal constitution amounted to arguments that the Delaware statute authorizing the FFP was preempted or unconstitutional, and that those issues were "*not* subject to adjudication by this California state court on a motion for forum non conveniens."  The court determined to enforce the FFP, declined jurisdiction over the claims in the complaint, and granted the motion to dismiss.

A judgment of dismissal was entered, and this appeal followed.

## DISCUSSION

### A.    *Applicable Law and Standards of Review*

As we have noted, the federal forum provision that is at the center of this dispute is found in Restoration Robotics' amended Certificate of Incorporation.  A certificate of incorporation is "a contractual agreement between the corporation and its shareholders."  (*Bushansky v. Soon-Shiong* (2018) 23 Cal.App.5th 1000, 1005 (*Bushansky*).)

"Where a plaintiff brings suit in California, the potential applicability of a contractual forum selection clause is raised by the defendant through a motion to dismiss on grounds of forum non conveniens."  (*Bushansky*, *supra*, 23 Cal.App.5th at p. 1005.)  Under the forum non conveniens doctrine, "a trial court has discretion to decline to exercise its jurisdiction over a cause of

---

[3] The trial court held that the FFP was not illegal under California law, and did not violate any California statute or public policy.  The court found that the FFP was procedurally, but not substantively, unconscionable.  And the court concluded that plaintiff failed to show that the FFP was unconstitutional or illegal under any federal law.

7

action that it believes may be more appropriately and justly tried elsewhere." (*Drulias v. 1st Century Bancshares, Inc.* (2018) 30 Cal.App.5th 696, 703 (*Drulias*).)

Whether the FFP comports with statutory or constitutional law is a legal question that we review de novo. (*Wunderlich v. County of Santa Cruz* (2009) 178 Cal.App.4th 680, 694.) Whether the FFP constitutes a valid contract is also a legal question, which we review de novo because the material facts are undisputed. (*HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1109.) And because the facts are undisputed, we review de novo the question whether the FFP is unconscionable and therefore unenforceable. (*Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1035.)

If the FFP is valid, applicable, and not unconscionable, the question remains whether enforcement of the FFP is reasonable.[4] (*Drulias*, *supra*, 30 Cal.App.5th at p. 703.) Some California Courts of Appeal apply the abuse of discretion standard in reviewing a trial court's decision to enforce a forum selection provision and others apply the substantial evidence standard. (*Id.* at p. 704.) " 'The practical differences between the [substantial evidence and abuse of discretion] standards of review are not significant,' " and both standards " 'entail considerable deference to the fact-finding tribunal.' "

---

[4] As a general matter, the party who seeks to avoid enforcement of an otherwise applicable forum selection clause has the burden of proving that enforcement would be unreasonable. (*Drulias*, *supra*, 30 Cal.App.5th at p. 703.) The burden is reversed " 'when the claims at issue are based on unwaivable rights created by California statutes.' " (*Ibid.*) Wong argues that the 1933 Act creates an unwaivable right for a plaintiff to file suit in state court, and that the 1933 Act should be regarded as equivalent to a California statute. As we will explain, we conclude there is no such unwaivable right under the 1933 Act.

(*Ibid.*)  This court applied the abuse of discretion standard in *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 7, 9), and we will do so here.

B.       *The FFP and the Provisions of the 1933 Act*

With exceptions that are not relevant here, the 1933 Act provides that lawsuits brought to enforce liabilities or duties created by the statute may be brought in federal or state court.  (15 U.S.C. § 77v(a) [granting "concurrent" jurisdiction].)  But a statute's "mere 'contemplation' of suit in any competent court does not *guarantee* suit in all competent courts, disabling the parties from adopting a reasonable forum-selection clause."  (*CompuCredit Corp. v. Greenwood* (2012) 565 U.S. 95, 102 [forum selection clause can require arbitration, or limit "the contemplated availability of all judicial forums . . . to a single forum by contractual specification"].)  Wong argues that this principle does not apply here.  The heart of Wong's argument is that the FFP contravenes "Congress's express policy choices," as reflected in two provisions of the 1933 Act:  the so-called "removal bar," which states that "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States" (15 U.S.C. § 77v(a) (section 77v(a))), and the so-called "anti-waiver provision," which states that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." (15 U.S.C. § 77n (section 77n).)  We discuss these provisions in more detail.

1.       *The Removal Bar of Section 77v(a)*

By its terms, section 77v(a) does nothing more or less than prevent a defendant from removing a civil case that has been filed in state court to the United States district court corresponding to the location where the case was filed.  (See 28 U.S.C. § 1441(a) [authorizing removal of civil actions "[e]xcept

9

as otherwise expressly provided by Act of Congress"].) Restoration Robotics does not seek to remove this case to federal court. Instead, Restoration Robotics seeks to enforce the FFP, which requires Wong to file his action in federal court in the first place, rather than in state court. Removal is not at issue here, so the removal bar has no apparent application to the FFP.

Wong urges us to look behind the words of the statute, arguing that we must not "interpret a statute so narrowly as to defeat its obvious intent" (*United States v. Braverman* (1963) 373 U.S. 405, 408.) Yet the very case on which Wong relies states that courts may not "ignore the express language" of a statute. (*Ibid.*) If statutory language is plain and unambiguous, like the language here, courts "must apply the statute according to its terms." (*Carcieri v. Salazar* (2009) 555 U.S. 379, 387.) "After all, only the words on the page constitute the law adopted by Congress and approved by the President." (*Bostock v. Clayton County, Georgia* (2020) __ U.S. __ [140 S.Ct. 1731, 1738].) And as the United States Supreme Court explained in a case concerning a different clause of Section 77v(a), "appeals to [statutory] purposes" do not "overcome the clear statutory language." (*Cyan, supra,* 138 S.Ct. at p. 1069.) To the contrary, as Justice Kagan wrote for a unanimous court, "[t]he statute says what it says—or perhaps better put here, does not say what it does not say."[5] (*Ibid.*) The removal bar of Section 77v(a)

---

[5] Accordingly, even though the United States Supreme Court has recognized that SLUSA is intended " 'to preclude certain vexing state-law class actions' "; that SLUSA "stopped plaintiffs from 'bringing class actions under state law' "; and that SLUSA " 'curtailed plaintiffs' ability to evade the [PSLRA] by bringing class-action suits under state rather than federal law,' " the text of the 1933 Act as amended by SLUSA could not be read to eliminate the concurrent jurisdiction provision or the general prohibition against removal. (*Cyan, supra*, 138 S.Ct. at p. 1072 [quoting U.S. Supreme Court cases].)

prohibits the removal of cases to federal court, but does not prohibit the enforcement of a forum selection clause concerning 1933 Act claims that is part of a company's certificate of incorporation.

Wong argues that Congress intended by the 1933 Act to block defendants from "unilaterally displac[ing] the plaintiff's forum preference in favor of federal court," whether by removal (which, according to Wong, was "the only clear means known to [Congress] at the time by which a defendant could unilaterally force a plaintiff into federal court") or by "any other meaningfully identical means, including the [FFP] at issue here."

At the outset, we do not view the FFP as "unilateral." Before the initial public offering at which Wong bought his shares, the FFP had been approved by Restoration Robotics' board of directors and its then-stockholders, and at the time Wong bought his shares it was included in the Certificate of Incorporation.

But even if the FFP were "unilateral," Wong's point downplays the significance of the holding of *Rodriguez de Quijas v. Shearson/American Express, Inc.* (1989) 490 U.S. 477 (*Rodriguez*). In *Rodriguez*, the United States Supreme Court concluded that a plaintiff's decision to litigate 1933 Act claims in state court could be overridden by means of an arbitration provision. In *Rodriguez*, the Supreme Court cited its earlier decision in *Scherk v. Alberto-Culver Co.* (1974) 417 U.S. 506, 519, for the proposition that arbitration agreements "are 'in effect, a specialized kind of forum selection clause'" (*Rodriguez, supra*, 490 U.S. at p. 483), and held that an arbitration provision in a "standard customer agreement" applies to 1933 Act claims even though the 1933 Act provides for concurrent state and federal court jurisdiction over causes of action. (*Id.* at pp. 478, 482, 485-486.) If, despite the grant of concurrent jurisdiction to state and federal courts in section

11

77v(a), 1933 Act claims can be adjudicated outside of *any* court by the terms of a forum selection provision that requires arbitration, we are hard pressed to see why the claims cannot be adjudicated in a federal court by the terms of an FFP.

Wong contends that reconciling an arbitration clause with the 1933 Act is different from reconciling an FFP, because, as the Supreme Court observed, allowing for arbitration "advance[s] the objective of allowing buyers of securities a broader right to select the forum for resolving disputes, whether it be judicial or otherwise" (*Rodriguez, supra*, 490 U.S. at pp. 482-483), while, Wong argues, an FFP limits a buyer's right to select the forum. The observation in *Rodriguez*, however, was not the basis of the holding.[6] In any event, we observe that the usual effect of an arbitration provision is to bar a plaintiff from having 1933 Act claims heard in any court, state or federal, which is not the case for the FFP.

2.    *The Anti-Waiver Provision of Section 77n*

Wong's other argument based on the 1933 Act is that under section 77n, the anti-waiver provision, he has an unwaivable right to have his 1933 Act claims heard in a state court if he so chooses.

---

[6] The holding in *Rodriguez* rested on the Supreme Court's determination that "the prohibition in [section 77n] on waiving 'compliance with any provision' of the Securities Act" does not apply to procedural provisions. (*Rodriguez, supra*, 490 U.S. at p. 482.) In *Rodriguez*, the Supreme Court overruled its earlier decision, in *Wilko v. Swan* (1953) 346 U.S. 427, 438, which had held that an agreement to arbitrate was void under the anti-waiver provision in section 77n. (*Rodriguez, supra*, 490 U.S. at p. 485.) The Supreme Court stated that *Wilko* reflected " 'the old judicial hostility to arbitration,' " which "ha[d] been steadily eroded over the years." (*Rodriguez* at p. 480.) We discuss the anti-waiver provision in the following section.

Without question, the anti-waiver provision prevents Wong from having to "waive compliance with" the provisions of the 1933 Act. (§ 77n.) But the issue is whether the FFP amounts to a waiver of compliance. Once again, we look to the decision in *Rodriguez.*

The United States Supreme Court held in *Rodriguez* that section 77n does not apply to the concurrent jurisdiction provision of the 1933 Act, and does not bar forum selection arrangements. (*Rodriguez*, *supra*, 490 U.S. at p. 481 ["the right to select the judicial forum and the wider choice of courts are not such essential features of the Securities Act that [§ 77n] is properly construed to bar any waiver of these provisions"].) In so doing, it construed section 77n the same way it had construed the anti-waiver provision of the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq. (1934 Act)) in *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220 (*McMahon*). (*Rodriguez* at pp. 482-483.) The 1934 Act anti-waiver provision, which voids "[a]ny condition, stipulation or provision binding any person to waive compliance with any provision" of the statute (15 U.S.C. § 78cc(a)), is similar to Section 77n in the 1933 Act. The plaintiffs in *McMahon* argued that an arbitration provision was not enforceable because it required them to waive the jurisdictional provision of the 1934 Act (15 U.S.C. § 78aa) which gives the district courts of the United States exclusive jurisdiction of violations of the 1934 Act. (*McMahon*, *supra*, 482 U.S. at pp. 227-228.) *McMahon* holds that the jurisdictional provision of the 1934 Act "does not impose any duty with which persons trading in securities must 'comply.'" (*Id.* at p. 228.) Because the jurisdictional provision imposes no duties, and because the anti-waiver provision "[b]y its terms . . . only prohibits waiver of the substantive obligations imposed by the [statute]," the waiver of the jurisdictional provision "does not constitute a waiver of 'compliance with any

provision' " of the 1934 Act.  Accordingly, the Supreme Court in *McMahon* upheld the arbitration provision.  (*Ibid*.)

If the exclusive federal jurisdiction provision of the 1934 Act does not impose any duty, as the United States Supreme Court held in *McMahon* (482 U.S. at p. 228), then neither does the concurrent jurisdiction provision of the 1933 Act.  And if the exclusive federal jurisdiction provision of the 1934 Act can be overridden by a forum selection agreement without violating the 1934 Act's anti-waiver provision, then the concurrent jurisdiction provision of the 1933 Act can likewise be overridden by a forum selection agreement without violating the 1933 Act's anti-waiver provision.  (See *Rodriguez, supra*, 490 U.S. at p. 484-485 [referring to the principle that the 1933 Act and 1934 Act "should be construed harmoniously because they 'constitute interrelated components of the federal regulatory scheme governing transactions in securities' "].)

Wong argues that *Rodriguez* and *McMahon* are distinguishable from his case because they concern arbitration provisions, and the Federal Arbitration Act (9 U.S.C. § 1 et seq.) established a federal policy favoring arbitration.  That distinction does not make the cases inapplicable.  If, as the Supreme Court held in *Rodriguez*, "resort to the arbitration process does not inherently undermine any of the substantive rights afforded" by the 1933 Act (*Rodriguez, supra*, 490 U.S. at p. 486), which authorizes concurrent jurisdiction in state and federal courts, we cannot discern how resort to a federal court could undermine any of those rights.

C.    *The Constitutionality of the Delaware Enabling Statutes*

Wong argues that to the extent the Delaware General Corporate Law allows FFP's, Delaware's statutory scheme violates the Commerce Clause and the Supremacy Clause of the United States Constitution.  Therefore,

14

Wong contends, the Restoration Robotics Certificate of Incorporation cannot lawfully include an FFP, and we should decline to enforce it.

1. *Commerce Clause*

The Commerce Clause of the United States Constitution provides that "Congress shall have power . . . [¶] To regulate Commerce . . . among the several States." (U.S. Const., art. I, § 8, cl. 3.) This grant of power to Congress "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden" interstate commerce. (*Oregon Waste Systems, Inc. v. Department of Environmental Quality of the State of Oregon* (1994) 511 U.S. 93, 98.)

If a state statute "1) directly regulates interstate commerce; 2) discriminates against interstate commerce; or 3) favors in-state economic interests over out-of-state interests . . . it violates the Commerce Clause per se" and is struck down "without further inquiry." (*National Collegiate Athletic Association v. Miller* (9th Cir. 1993) 10 F.3d 633, 638 (*NCAA*).) If a state statute " 'regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental,' " we apply a balancing test and uphold the statute " 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.' " (*Edgar v. MITE Corp.* (1982) 457 U.S. 624, 640 (*Edgar*).) Wong argues that Delaware's statutes indirectly burden interstate commerce, and fail to pass the balancing test.

We begin by discussing *Edgar* and *NCAA*, the two Commerce Clause cases on which Wong's argument relies. They are quite unlike this case.

In *Edgar*, *supra*, 457 U.S. at page 626, a corporation sued the Illinois Secretary of State, challenging an Illinois statute that imposed a state registration requirement on takeover offers for the shares of companies with

ties to Illinois, even if the target company was not an Illinois corporation. (*Id.* at pp. 626-628.) The statute was struck down because it "purport[ed] to regulate directly and to interdict interstate commerce." (*Id.* at p. 643.) In addition, the statute failed the balancing test. The statute sought to protect Illinois shareholders, but the United States Supreme Court concluded that the protections afforded to Illinois shareholders were "for the most part, speculative." (*Id.* at p. 645.) On the other hand, the statute's nationwide reach had the effect of "giv[ing] Illinois the power to determine whether a tender offer may proceed anywhere"; and the Supreme Court concluded that the "effects of allowing the Illinois Secretary of State to block a nationwide tender offer are substantial," because "[s]hareholders are deprived of the opportunity to sell their shares at a premium." (*Id.* at p. 643.)

*NCAA* concerns a Nevada statute that required "any national collegiate athletic association to provide a Nevada institution, employee, student-athlete, or booster who is accused of a rules infraction with certain procedural due process protections during an enforcement proceeding in which sanctions may be imposed." (*NCAA, supra,* 10 F.3d at p. 637, fn. omitted.) The NCAA, which was apparently the only organization regulated by the statute (*id.* at p. 638), sued the Governor of Nevada, and others, challenging the statute under the Commerce Clause. (*Id.* at p. 638.) The court of appeals concluded that the statute was unconstitutional as a direct regulation of interstate commerce: the statute was "directed at interstate commerce and only interstate commerce." (*Id.* at p. 638.) The court of appeals concluded that it had no need to apply the balancing test, because the statute violated the Commerce Clause per se. (*NCAA, supra,* 10 F.3d at pp. 639.)

16

a.      *State Action*

The parties agree that state action is required for Wong to bring a Commerce Clause claim.  (*Roberts v. AT&T Mobility LLC* (9th Cir. 2017) 877 F.3d 833, 837 (*Roberts*) [" 'presence of state action' " is " 'threshold requirement of any constitutional claim' "]; see *New Energy Co. of Indiana v. Limbach* (1988) 486 U.S. 269, 278 [Commerce Clause prohibits state action "in connection with the State's regulation of interstate commerce," italics omitted].)

As a general matter, a private entity, like Restoration Robotics, is not a state actor except "in a few limited circumstances," including "when the private entity performs a traditional, exclusive public function," or "when the government compels the private entity to take a particular action," or "when the government acts jointly with the private entity."  (*Manhattan Community Access Corp. v. Halleck* (2019) __ U.S. __ [139 S.Ct. 1921, 1928].)  These circumstances do not easily fit with the facts here.  Restoration Robotics does not perform a traditional, exclusive public function; nor is it compelled by Delaware law to include an FFP in its certificate of incorporation; nor is Delaware acting jointly with Restoration Robotics.  It is well-established that "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action."  (*American Manufacturers Mutual Insurance Co. v. Sullivan* (1999) 526 U.S. 40, 52; see *Roberts*, *supra*, 877 F.3d at p. 845 [rejecting constitutional challenge to arbitration clause on the grounds of no state action, when no law requires or encourages waiver of right to litigate].)

Wong argues that there is state action here because his case is not "a purely private dispute that occurs under the backdrop of a permissive state law"; instead it "raises constitutional concerns because the only way that the

private dispute can occur is because the state created an unconstitutional scheme."

Significantly, Wong's assertion in his opening brief that he has met the state action requirement is not supported by any authority. And the only authority he cites in his reply brief to support his claim of state action for purposes of the Commerce Clause is a partial concurrence to a First Amendment case, *Denver Area Educational Telecommunications Consortium, Inc. v. F.C.C.* (1996) 518 U.S. 727, 782 (Kennedy, J., concurring in part and dissenting in part).

The two cases on which Wong relies for his Commerce Clause argument (*Edgar* and *NCAA*) are entirely unlike his with respect to state action. Wong's challenge arises from Restoration Robotics' decision as a Delaware corporation to include an FFP in its certificate of incorporation, as permitted, but not required or even encouraged by Delaware law. The Commerce Clause challenges in *Edgar* and *NCAA* concerned state statutes that imposed *requirements* on corporations (*Edgar*) or associations (*NCAA*), including corporations and associations based out of state. (*Edgar*, *supra*, 457 U.S. at p. 627; *NCAA*, *supra*, 10 F.3d at p. 639.) Neither *Edgar* nor *NCAA* involves a Commerce Clause violation that arises from a private actor's decision to take action that is permitted, but not required or even encouraged, by state law.

Given Wong's failure to demonstrate any precedent for his Commerce Clause claim and given the reluctance of courts to expand the state action doctrine (*Roberts*, *supra*, 877 F.3d at p. 841), we cannot conclude that there is state action here.

b. *Merits*

Even apart from the lack of state action, we are unpersuaded by Wong's Commerce Clause claim. Wong argues that the Delaware statutory scheme

18

permitting FFP's indirectly "burdens interstate commerce by permitting corporations to unilaterally condition the interstate sale of securities on the loss of the right to state court fora with no clear Delaware interest in doing so." His argument therefore requires us to apply the balancing test: we must uphold the statute unless the burden on interstate commerce is " 'clearly excessive in relation to the putative local benefits.' " (*Edgar*, *supra*, 457 U.S. at p. 640.)

"A State has an interest in promoting stable relationships among parties involved in the corporations it charters." (*CTS Corp. v. Dynamics Corp. of America* (1987) 481 U.S. 69, 91 (CTS Corp.) [rejecting Commerce Clause challenge to Indiana statute that effectively conditioned the acquisition of control of an Indiana corporation on a majority of the preexisting disinterested shareholders and thereby burdened tender offers made by out-of-state buyers].) The Delaware Supreme Court has determined that FFP's advance Delaware's policies with respect to corporations, including "certainty and predictability, uniformity, and prompt judicial resolution to corporate disputes." (*Salzberg*, *supra*, 227 A.3d at p. 137, fns. omitted.) The Delaware Supreme Court further concluded that FFP's advance the goals of judicial economy and the avoidance of " 'duplicative efforts among courts in resolving disputes.' " (*Ibid.*) And FFP's are consistent with "the need to maintain balance, efficiency, fairness, and predictability in protecting the legitimate interests of all stakeholders, and to ensure that the laws do not impose unnecessary costs on Delaware entities." (*Ibid.*) By limiting the litigation of 1933 Act claims to federal courts, FFP's "allow for consolidation and coordination of such claims to avoid inefficiencies and unnecessary costs." (*Ibid.*)

Wong suggests that only the corporation benefits from an FFP, and that shareholders do not. Yet Restoration Robotics' then existing shareholders approved the inclusion of the FFP in the certificate of incorporation, and the avoidance of inefficiencies and unnecessary costs in litigation is a benefit to companies and shareholders alike. (See *Salzberg, supra*, 227 A.3d at p. 115 [noting that "no procedural mechanism is available to consolidate or coordinate multiple suits in state and federal court"; "[t]he costs and inefficiencies of multiple cases being litigated simultaneously in both state and federal courts are obvious"; and there is a "possibility of inconsistent judgments and rulings on other matters, such as stays of discovery"].)

Any burden on interstate commerce here is slight compared to the benefits. The burden, arising from Delaware permitting (but not requiring) Delaware corporations to include FFP's in their articles of incorporation, lies wholly in the FFP's specification that a 1933 Act claim be brought in federal court (which the 1933 Act identifies as an appropriate forum for 1933 Act claims) rather than state court. Notably, the FFP does not prevent a shareholder from bringing a 1933 Act claim in court, and does not require venue in any particular federal district court. The FFP simply restricts the range of possible forums for a shareholder's 1933 Act claim, absent consent from Restoration Robotics.

We disagree that *Edgar* supports Wong's position. As we noted above, the challenged statute in *Edgar* was not limited to Illinois corporations and effectively allowed Illinois to block nationwide tender offers. (*Edgar, supra*, 457 U.S. at pp. 626-627.) A statute that allows FFP's, which limit the choice of forum for 1933 Act claims, is not nearly as extensive in effect as the statute in *Edgar*.

20

We conclude that Delaware has a legitimate interest in allowing its corporations to include FFP's in their certificates of incorporation, and that any burden on interstate commerce from the inclusion of an FFP does not exceed the benefits provided by the statute.

2. *Supremacy Clause*

a. *Additional Background*

The Supremacy Clause of the United States Constitution states that federal laws are the "supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." (U.S. Const., art. VI, cl. 2.) Under the Supremacy Clause, "[a] state may not discriminate against rights arising under federal laws." (*McKnett v. St. Louis & S.F. Ry. Co.* (1934) 292 U.S. 230, 234.) The Supremacy Clause prohibits states from "dissociat[ing] themselves from federal law because of disagreement with its content," and from refusing to allow state court jurisdiction over federal claims while permitting state court jurisdiction over "similar state-law actions." (*Howlett By and Through Howlett v. Rose* (1990) 496 U.S. 356, 371, 378 (*Howlett*).)

In *Howlett*, the United States Supreme Court reversed a Florida state court judgment that dismissed a suit brought under 42 United States Code section 1983 (section 1983), a statute that provides a remedy when federal rights are violated by state government employees and others "acting under color of state law." (*Howlett, supra*, 496 U.S. at p. 358.) The Florida state court dismissed a former student's claim against a school board on the basis of a state-law defense of "sovereign immunity," even though that defense would not have been available if the student had brought the claim in federal court. (*Id.* at p. 359.) The United States Supreme Court explained that "[f]ederal law makes governmental defendants that are not arms of the State,

21

such as municipalities, liable for their constitutional violations" and that the state court's interpretation of Florida law "would make all such defendants absolutely immune from liability under the federal statute." (*Id.* at p. 377.) If Florida's law of sovereign immunity "reflect[ed] a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law." (*Id.* at pp. 377-378.) Nor could Florida simply exclude section 1983 claims from the types of tort claims that the state court could hear against a school board. That would be discriminatory, because the state exercised jurisdiction over tort claims against school boards "of the size and type of [the student's] claim here, and it can enter judgment against them." (*Id.* at p. 378.)

Here, as we have stated, Delaware law authorizes, but does not require, Delaware corporations to adopt forum selection clauses requiring 1933 Act claims to be brought in federal court. (Del. Code Ann., tit. 8, § 102, subd. (b)(1); *Salzberg*, *supra*, 227 A.3d at pp. 113-114.) However, as we explain further below, Delaware law does not allow Delaware corporations to adopt forum selection clauses that exclude Delaware state court as a forum for "internal corporate claims," which is a defined term. (Del. Code Ann., tit. 8, § 115 (section 115).)

Seeking an opening for his Supremacy Clause claim, Wong contends that there are state law securities claims that are "internal corporate claims" similar to 1933 Act claims. We understand Wong to be arguing that the Delaware statutory scheme that permits FFP's is unconstitutional because it protects state court jurisdiction (in Delaware) for those state law securities claims, but fails to protect state court jurisdiction (in Delaware or any other state) for similar federal claims, thus discriminating against federal law in

favor of state law in violation of the Supremacy Clause. And, Wong argues, because the statutory scheme that allows the creation of the FFP is unconstitutional, the FFP is unenforceable.

### b. *Analysis*

The parties agree that Wong's challenge meets the state action requirement for a constitutional claim. (*Roberts*, *supra*, 877 F.3d at p. 837.) We assume for purposes of argument that the requirement is met, and address the merits of the claims.

Wong's argument appears to rest on a false premise. It presumes that although Delaware law allows an FFP that requires him to bring his 1933 Act claim in federal court, Delaware law protects state court jurisdiction (more precisely, Delaware state court jurisdiction) for state law claims that are similar to his 1933 Act claim. But Wong fails to identify any state law claim that is similar to his in "size and type." (See *Howlett*, *supra*, 496 U.S. at p. 367, 378 [differential exercise of jurisdiction over state and federal claims that are similar in "size and type" shows discrimination against federal causes of action].) This is not surprising in view of the fact that the 1933 Act itself "completely disallows (in both state and federal courts) sizable class actions that are founded on state law and allege dishonest practices regarding a nationally traded security's purchase or sale." (*Cyan*, *supra*, 138 S.Ct. at p. 1067.) To put it another way, Congress has made it clear that no state law securities class actions with claims similar to 1933 Act claims can be brought in any court, state or federal.

Nevertheless, for his argument Wong relies on the interplay between two sections of the Delaware General Corporate Law. He contends that section 115 "seem[s] to" protect "some claims arising from the purchase or sale of stocks," by requiring them to be brought in a Delaware state court,

and offers as an example claims brought under section 111 (Del. Code. Ann., tit. 8, § 111 (section 111).) To understand this contention, we look more closely at those two statutory sections.

Section 115 provides that the certificate of incorporation or bylaws of a Delaware corporation may require that "internal corporate claims" be brought exclusively in Delaware state courts, and may not prohibit the bringing of "internal corporate claims" in Delaware state courts. (§ 115.) "Internal corporate claims," as defined in Section 115, includes claims for which the Delaware corporate law "confers jurisdiction upon the Court of Chancery." (§ 115.)

Section 111 of Delaware's corporate law gives the Delaware Chancery Court jurisdiction over "[a]ny civil action to interpret, apply, enforce or determine the validity of the provisions of [¶] . . . [a]ny instrument, document or agreement (i) by which a corporation creates or sells, or offers to sell, any of its stock, or any rights or options respecting its stock, or (ii) to which a corporation and one or more holders of its stock are parties, and pursuant to which any such holder or holders sell or offer to sell any of such stock."[7] (§ 111, subd. (a)(2).)

A section 111 claim could cover "documents . . . pertaining to sales of stock by the issuing corporation, including offering materials" (*Salzberg*, *supra*, 227 A.3d at p. 129, fn. 130), and could therefore, in Wong's words, "aris[e] from the purchase or sale of stocks." Because the Delaware Chancery

---

[7] Delaware's "Court of Chancery is a court of limited subject matter jurisdiction. It can acquire subject matter jurisdiction in the first instance by three different means: '(1) the invocation of an equitable right; (2) a request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction.' " (*Kraft v. WisdomTree Investments, Inc.* (Del.Ch.Ct. 2016) 145 A.3d 969, 973-974 (*Kraft*).)

Court would have jurisdiction over such a section 111 claim, section 115 would prohibit Delaware corporations from having corporate provisions purporting to keep section 111 claims out of Delaware state court. Wong argues that Delaware impermissibly protects state court jurisdiction over claims brought under section 111 (by means of § 115), but fails to protect state court jurisdiction over similar claims brought under the 1933 Act, as evidenced by the fact that FFP's are permitted by Delaware corporate law.

The problem with this argument is that section 111 claims, even if they arise from the purchase or sale of stocks, are not like Wong's 1933 Act claim for purposes of a Supremacy Clause analysis. Section 111 claims, which may concern the interpretation, application, enforcement, or validity of certain corporate documents and instruments, are essentially contractual disputes. In providing the Court of Chancery with jurisdiction over those claims, section 111 "gives the Court of Chancery jurisdiction over some subject matter that is not inherently equitable to take advantage of the Court's special corporate expertise." (*Kraft*, *supra*, 145 A.3d at pp. 973-974 [describing section 111 as "[a] prime example" of a statute delegating subject matter jurisdiction to the Court of Chancery].) Wong provides no reason to believe his 1933 Act claim, though it arises from the purchase and sale of stocks, is similar in "size and type" to a section 111 claim (*Howlett*, *supra*, 496 U.S. at p. 378) and therefore provides no reason to conclude that preserving state court jurisdiction for a section 111 claim but not preserving state court jurisdiction for a 1933 Act claim runs afoul of the Supremacy Clause.

Further, the cases on which Wong relies, *Howlett*, *supra*, 496 U.S. 356, which we discussed above, and *Haywood v. Drown* (2009) 556 U.S. 729, 735 (*Haywood*)) are unlike the case before us.

25

In *Haywood*, the United States Supreme Court invalidated a New York State law that "register[ed] its dissent" on an issue of federal policy "by divesting its courts of jurisdiction over a disfavored federal claim in addition to an identical state claim." (*Haywood*, *supra*, 556 U.S. at pp. 737-738.) The New York statute prevented the state's trial courts of general jurisdiction from hearing "any suit arising under state or federal law seeking money damages from correction officers for actions taken in the scope of their employment." (*Id.* at p. 732.) The New York law was facially neutral as to state and federal law, but that did not save it from a Supremacy Clause challenge, because the effect of the statute was that the state's trial courts could not hear section 1983 cases brought against state correction officers even though the courts generally exercised jurisdiction over section 1983 suits against state officials. (*Id.* at p. 731.) The Supreme Court explained, "A jurisdictional rule cannot be used as a device to undermine federal law, no matter how evenhanded it may appear." (*Id.* at p. 739.) Therefore, the Supreme Court held, "having made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, New York is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy." (*Id.* at p. 740).

*Haywood* and *Howlett* stand for the principle that "a State cannot simply refuse to entertain a federal claim based on a policy disagreement." (*Haywood*, *supra*, 556 U.S. at p. 737.) But the case before us does not involve Delaware refusing to entertain a federal claim. Nothing in section 115 reflects a policy to provide immunity from 1933 Act claims, nor does section 115 prohibit Delaware from entertaining 1933 Act claims. By allowing corporations and shareholders to agree to forum selection provisions that

26

limit 1933 Act claims to federal courts, Delaware does not purport to shut its doors, or the doors of any other state court to 1933 Act claims.

In sum, section 115 does not reflect any quarrel between Delaware and federal law over the content of the 1933 Act or the extent of the remedies available under the 1933 Act. Nor does it discriminate in favor of state law claims and against similar federal claims. Instead, section 115 "indicates a concern for centering particular claims – 'internal corporate claims' [concerning Delaware corporations] in Delaware. This makes sense given Delaware's interest and expertise in corporate law." (*Salzberg*, *supra*, 227 A.3d at p. 120.) Other than that, Delaware leaves parties free to adopt forum selection provisions for state and federal claims.

D.     *The Validity and Enforceability of the FFP*

In his final set of arguments, Wong contends that the FFP is invalid as a matter of California contract law, and that even if it were valid, it is unenforceable under California law. Restoration Robotics argues that Delaware law governs the validity of the FFP and that the FFP is valid in view of the Delaware Supreme Court's decision in *Salzberg*, *supra*, 227 A.3d 102. Restoration Robotics agrees that California law governs the issue of enforceability, and argues that the FFP is enforceable.

1.     *Delaware Law and the Issue of Validity*

We begin with the issue of validity. Under the internal affairs doctrine, California courts recognize that the law of the state of incorporation applies to an action that concerns the "internal affairs" of corporations. (*Vaughn v. LJ International, Inc.* (2009) 174 Cal.App.4th 213, 223.) "[I]nternal affairs" are "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." (*Edgar*, *supra*, 457 U.S. at p. 645 [absent the internal affairs doctrine, "a corporation could be faced

27

with conflicting demands" concerning its own internal matters].)  As a general matter, the validity of a certificate of incorporation, including the validity of its provisions, is a type of internal affair that is likewise governed by the law of the state of incorporation.  (See *CTS Corp., supra,* 481 U.S. at p. 90 ["a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation"]; *Boilermakers Local 154 Retirement Fund v. Chevron Corp.* (Del.Ch.Ct. 2013) 73 A.3d 934, 938 [under the internal affairs doctrine, a court facing motion to enforce corporate bylaws "will consider, as a first order issue, whether the bylaws are valid under the 'chartering jurisdiction's domestic law' "].)

In *Salzberg*, the Delaware Supreme Court held that FFP's are permitted in a company's certificate of incorporation under section 102, subdivision (b)(1), of the Delaware General Corporate Law, which authorizes "two broad types of provisions: [¶] *any* provision for the management of the business and for the conduct of the affairs of the corporation, [¶] and [¶] *any* provision creating, defining, limiting and regulating the powers of the corporation, the directors, and the stockholders, or any class of the stockholders, . . . if such provisions are not contrary to the laws of this State." (*Salzberg, supra,* 227 A.3d at p. 113 [discussing Del. Code Ann., tit. 8, § 102, subd. (b)(1)].)  Under Delaware law, FFP's are valid provisions within the certificates of incorporation of Delaware corporations, and therefore we need not consider their validity under California contract law.[8]

---

[8] In *Salzberg*, the Delaware Supreme Court held that because FFP's concern 1933 Act claims, the FFP's themselves do not regulate the forum choice for claims that constitute "internal affairs" under *Edgar*, which are clearly within the scope of section 102, subdivision (b)(1), nor do they regulate forum choice for "purely 'external' claims" such as tort or commercial contract

28

Wong relies on just one case to support his contention that California law governs the validity of the FFP, *Lidow v. Superior Court* (2012) 206 Cal.App.4th 351. *Lidow* holds that a claim brought in California by an officer of a Delaware corporation for wrongful termination in violation of public policy falls outside the scope of the internal affairs doctrine, and thus California, rather than Delaware law, governed the claim. (*Id.* at pp. 355, 356-357.) The case does not help Wong, because it says nothing about the choice of law for claims concerning the validity of provisions in a corporation's governing documents.

2. *Enforceability*

The question remains whether the FFP should be enforced. Wong recognizes that under California law he can be bound by the FFP even though he did not negotiate it. (See *Drulias*, *supra*, 30 Cal.App.5th at p. 707 ["forum selection clause need not be subject to negotiation to be enforceable"].) A forum selection clause that was not the subject of bargaining, like the FFP with respect to Wong, may be enforced unless there is " 'a showing that it was outside the reasonable expectations of the weaker or adhering party or that enforcement would be unduly oppressive or unconscionable.' " (*Id.* at p. 708.)

Wong contends that the FFP is outside the reasonable expectations of shareholders who purchased Restoration Robotics shares, and that the FFP is unconscionable.

---

claims, which are outside the scope of section 102, subdivision (b)(1). (227 A.3d at p. 131.) Instead, FFP's regulate forum choice for claims that raise what the Delaware Supreme Court characterized as "intra-corporate affairs," a category that is within the "outer band" of the scope of section 102, subdivision (b)(1). (*Ibid.*)

29

a. *Reasonable Expectations*

In concluding that Wong failed to meet his burden to show that enforcement of the FFP would be unreasonable, the trial court determined that the FFP did not disrupt any of the substantive rights of shareholders under the 1933 Act; the FFP merely made a procedural change, by requiring the filing of claims in federal court. The court observed, "There is no procedural loss of Due Process, as [shareholders] can present their federal law claims to a federal court, in a state or province of a state close to their residence, have the opportunity for discovery, and trial by jury. There is even greater authority in federal court to obtain personal jurisdiction over defendants, and to subpoena witnesses to trial." Wong fails to show that the trial court abused its discretion in enforcing the FFP. (*Drulias*, *supra*, 30 Cal.App.5th at p. 703.)

Wong contends that an ordinary investor, the weaker party in a purchase of stock pursuant to an IPO, had no reason to expect to be bound by an FFP, because the 1933 Act provides for state and federal courts to have concurrent jurisdiction over all claims, without the possibility of removal to federal court. He also contends that the FFP is beyond the reasonable expectations of investors because of its lack of prominence in the amended registration statement. He points out that the September 18, 2017 amendment consists of 154 pages of text, plus exhibits, and that the FFP can be discovered only by looking at the list of exhibits, finding the link to the "Form of Amended and Restated Certificate of Incorporation," in effect at the time of the offering, and then reviewing the five-page certificate of incorporation. In other words, according to Wong, an ordinary investor should not be expected to pore over a registration statement or otherwise investigate a company's certificate of incorporation, and any investor who

30

takes the time to do so should not expect to be bound by a novel provision in the certificate of incorporation.[9]  The weakness of these arguments is reflected in Wong's failure to cite any case authority to support them.  Forum selection clauses have long been in existence, and the fact that this one is innovative does not mean it is not binding.  And since a "central purpose[ ]" of the 1933 Act "is full and fair disclosure relative to the issuance of securities" (*Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.* (9th Cir. 1973) 474 F.2d 476, 480), we hesitate to agree that an investor is excused from attending to the required disclosures, particularly when they concern the governing documents of a corporation.

The *Drulias* case, on which the trial court relied in its analysis of reasonability, is instructive on this issue.  There, a shareholder sued a Delaware corporation and its directors in California state court alleging that they had breached their fiduciary duties in approving a merger.  (*Drulias*, *supra*, 30 Cal.App.5th at p. 700.)  The defendants filed a motion to dismiss based on a forum selection bylaw that required the claim be litigated in Delaware.  (*Id.* at p. 702.)  The trial court stayed the California litigation (*ibid.*), rejecting the shareholder's argument that enforcement of the bylaw was unreasonable even though the bylaw had been adopted unilaterally by the board without notice to shareholders, simultaneous with the adoption of the merger agreement.  (*Id.* at p. 707.)  The Court of Appeal affirmed, explaining that at the time the shareholder bought the stock he knew or should have known that the company was a Delaware corporation, and that consistent with Delaware law, its certificate of incorporation empowered directors to amend corporate bylaws unilaterally.  (*Id.* at p. 708.)  Further,

---

[9] The FFP constitutes the first paragraph of Article VIII of the certificate of incorporation, under the bold face caption, "Exclusive Forum."

31

the shareholder should have expected that the company would prefer to litigate in Delaware. (*Ibid.*) The FFP here presents an even stronger case for enforcement than the provision in *Drulias* in some respects: although the plaintiff in *Drulias* should have expected the creation of a forum selection provision, there was no such provision in effect when he bought his shares. (*Ibid.*) Here, however, the FFP was made public in an amendment to the registration statement several weeks before the IPO, when it became effective.

In arguing that the FFP is unenforceable, Wong argues that his case is distinguishable from *Drulias* in two respects. First, the FFP was "brand new and entirely untested," in contrast with the Delaware forum selection bylaw, which was adopted years after such provisions had been approved by the Delaware Chancery Court. Second, the FFP "fl[ies] in the face of an Act of Congress," unlike the provision in *Drulias*, which concerned an internal affairs claim. The first distinction carries little weight: the fact that the provision was new might mean that Wong could anticipate litigation as to whether it would be enforced, but does not mean that he should expect that it would not be enforced. And we dismiss the second distinction in view of our conclusion that the FFP does not conflict with the 1933 Act.[10]

---

[10] In his opening brief on appeal Wong claims that enforcing the FFP "cannot ' "accomplish substantial justice." ' " Wong draws his quotation from a passage from *Drulias* in which the Court of Appeal noted that "[i]n the context of forum selection clauses, enforcement is considered unreasonable where 'the forum selected would be unavailable or unable to accomplish substantial justice.' " (*Drulias*, *supra*, 30 Cal.App.5th at p. 707.) Because the 1933 Act authorizes the filing of suits in federal court, we cannot agree with Wong's suggestion that enforcement of the FFP is unreasonable because the selected forum would be " 'unable to accomplish substantial justice.' " (*Ibid.*)

b. *Unconscionability*

For a contract term to be unenforceable as unconscionable, it must be both procedurally and substantively unconscionable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).) Procedural unconscionability arises from " ' "oppression" ' or ' "surprise," ' " while substantive unconscionability arises from " ' "overly harsh or one-sided results." ' " (*Ibid.*) " ' "Oppression" arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice." [Citations.] "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.' " (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 245.) "[T]he more substantively oppressive the contract term the more substantially oppressive a contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) Whether a contract is unconscionable is "highly dependent on context." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911.)

Wong argues that the FFP is procedurally unconscionable because it is part of a contract of adhesion, defined as a " 'standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 113.) Wong concludes that because the FFP is part of a contract of adhesion, he has demonstrated procedural unconscionability. His conclusion rests on the statement that " '[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability.' " (*Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th

33

317, 323 (*Cabatit*).)  The word "essentially" is an important qualifier.  Wong does not cite any published case in which a court has held that a provision in a corporation's certificate of incorporation is procedurally unconscionable.  Instead, Wong points to cases that involve consumer contracts or employment agreements.  (See*, e.g., Tiri v. Lucky Chances, Inc., supra,* 226 Cal.App.4th at pp 245-246 [clause delegating to arbitrator questions concerning the enforceability of agreement is procedurally unconscionable as part of adhesive arbitration agreement presented to employee]; *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853-854 [arbitration provision in adhesive reverse mortgage loan agreement is procedurally unconscionable].)

The facts of *Cabatit* bear no resemblance to the facts before us.  In *Cabatit*, which concerned the enforceability of an arbitration clause, a salesperson came to plaintiffs' home and made a presentation about solar products.  (*Cabatit, supra,* 60 Cal.App.5th at p. 320.)  Plaintiffs selected a lease plan, at which point the salesperson opened a standard contract on an electronic device and told the plaintiffs they need not read the agreement because "he would go over the details" (*ibid.*), but the salesperson did not explain anything about the arbitration clause.  (*Id.* at p. 323.)  Nevertheless, he required plaintiffs to sign the agreement and initial parts of it.  The salesperson scrolled through the agreement quickly, indicating where signatures or initials were needed.  (*Id.* at p. 321.)  The plaintiffs were not given a copy of the agreement after it was signed.  (*Id.* at p. 323.)  The Court of Appeal affirmed the trial court's denial of the company's motion to compel arbitration.  (*Id.* at p. 320.)  *Cabatit* provides no basis to conclude that the FFP is procedurally unconscionable.

Wong also contends that the FFP was procedurally unconscionable because he had no bargaining power to negotiate it, and it was hidden in a prolix amendment to the registration statement. But provisions of a certificate of incorporation are typically not negotiable, and prolixity is a common characteristic of registration statements and their amendments as documents filed with the Securities and Exchange Commission, the agency with authority over the "[p]ublic disclosure of pertinent facts concerning public offerings of securities." (17 C.F.R. § 200.1(a).)

Even if the FFP were procedurally unconscionable, it is not substantively unconscionable. Wong argues that because the FFP requires a plaintiff to file a lawsuit alleging 1933 Act claims in federal court unless Restoration Robotics consents in writing to the selection of an alternate forum, the provision is overly harsh and overly one-sided. Wong argues that the provision is unduly harsh because it forces a plaintiff to waive "a congressionally granted right" and unduly one-sided because it removes from plaintiff the ability to unilaterally select a state forum for litigation. We decline to hold that there is anything substantively unconscionable in the waiver of the waivable procedural right to a state forum, particularly where, as here, the provision does not restrict a plaintiff's procedural right under the statute to file suit in a local federal court.

In sum, we conclude that the FFP is not unconscionable, and Wong has failed to show error in the trial court's exercise of its discretion to enforce it.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.

_____
Miller, J.

WE CONCUR:


_____
Stewart, Acting P.J.


_____
Mayfield, J.*


A161489, *Wong v. Restoration Robotics, Inc.*

---

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Court:  San Mateo County Superior Court

Trial Judge:  Hon. Marie S. Weiner

Robbins Geller Rudman & Dowd LLP, Andrew S. Love, James I. Jaconette; Goldstein & Russell, P.C., Thomas C. Goldstein, Molly Runkle, Charles H. Davis; Cotchett, Pitre & McCarthy LLP, Mark C. Molumphy, Tyson C. Redenbarger, Noorjahan Rahman, for Plaintiff and Appellant

Latham & Watkins, Matthew Rawlinson, Daniel R. Gherardi, Gavin M. Masuda, Nicholas Rosellini, Melissa Arbus Sherry, for Defendant and Respondent

Munger, Tolles & Olson LLP, John W. Spiegel, Elaine J. Goldenberg, for Amicus Curiae Chamber of Commerce of the United States of America, in support of Respondent

A161489, *Wong v. Restoration Robotics, Inc.*